IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORRAINE L. WEITZ, Personal Representative
of the Estate of Arlene Gutierrez, Deceased, and
Personal Representative of the Estate of Loretta
Gutierrez, Deceased,

                        Plaintiff,

vs.                                                                                                                   No. CIV 94-1286 MV/DJS

THE UNITED STATE OF AMERICA, et al.,

                        Defendants

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS TO RECONSIDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reconsider Order Granting Lovelace Defendant's Motion for Summary Judgment or, in the Alternative, to Certify the Question of Duty to the Supreme Court of New Mexico, filed June 20, 1997 **[Doc. No. 157]** and Plaintiff's Motion to Reconsider the Court's Order Dismissing Plaintiff's Claims Against the United States, filed June 20, 1997 **[Doc. No. 155]**. The Court, having considered the pleadings, the relevant law, and being otherwise fully-informed, finds that Plaintiff's motions are not well-taken and will be **DENIED**.

### FACTUAL BACKGROUND

Plaintiff Lorraine L. Weitz, as personal representative, seeks damages for the deaths of her sister, Arlene Gutierrez, and her niece, Loretta Gutierrez. As set forth in the Court's

Memorandum Opinion and Order Granting Defendants' Motions for Dismissal and Summary Judgment, filed May 27, 1997 [Doc. No. 150], the uncontroverted facts underlying this case are as follows:

Edward (Eddie) Gutierrez killed his wife and daughter, Arlene and Loretta Gutierrez, and then killed himself sometime during the night of January 20-21, 1992 at their family home in Rio Rancho, New Mexico.  At the time of these killings, Eddie Gutierrez was a Staff Sergeant in the United States Air Force stationed at Kirtland Air Force Base (KAFB) in Albuquerque, New Mexico.  The Gutierrez's had recently separated, and Arlene Gutierrez had indicated her intent to divorce Eddie.

When the Gutierrez's separated in November, 1991, Arlene and Loretta moved in with Arlene's father.  The Gutierrez's sought counseling for their marital difficulties at the Family Support Center, part of the mental health facility at KAFB.  Pursuant to an agreement between the Air Force and independent contractor Lovelace Medical Center ("Lovelace"), Lovelace employees provided mental health services for active-duty and retired Air Force personnel at the KAFB mental health facility when no Air Force mental health specialists were available.

The Gutierrez's first met with Barry Rumbles, a licensed certified social worker employed by Lovelace on December 4, 1991.  After an initial screening assessment, Mr. Rumbles referred them locally to Cal Bolinder, Ph.D. for counseling.  Dr. Bolinder conducted one joint session with the Gutierrez's on December 9, 1991, and had individual sessions with each of them on December 11 and 12, 1991.  He had several subsequent telephone conversations with Arlene between December 9, 1991, and January 17, 1992, but never saw either of the Gutierrez's in person again.

On December 29, 1991, Arlene went to the Gutierrez's marital home in Rio Rancho to

pick up Loretta after she had spent the day with her father. At some point during that visit, a confrontation arose between Eddie and Arlene over their impending divorce. During the course of that confrontation, Eddie displayed a small caliber handgun, which Arlene and Loretta wrestled away from him before fleeing the house.

The next day, December 30, 1991, Arlene telephoned Eddie's commanding officer, Colonel (Col.) Richard Haupt, to report the incident and also to report that Eddie had threatened to kill her and himself with his guns. Col. Haupt called Eddie into his office and, after talking with him, ordered him to undergo evaluation at the KAFB mental health facility. Having no authority to order the confiscation of Eddie's personal property, Col. Haupt asked Eddie to turn his personal firearms over to his immediate squadron supervisor, Master Sergeant (M.Sgt.) Keith Yekel. Col. Haupt advised Arlene of his actions.

Eddie reported to the KAFB mental health facility on December 30, 1991. He was seen for initial screening by Genevieve Davidge, a licensed clinical social worker employed by independent contractor Lovelace. Ms. Davidge noted that Eddie seemed agitated and scattered, but that he denied any suicidal intent and characterized the December 29 gun incident with Arlene as a scare tactic. Ms. Davidge scheduled Eddie for a second appointment the next day, December 31, 1991.

On December 31, Eddie turned his personal weapons over to M.Sgt. Yekel as requested by Col. Haupt. However, he resisted attending his second appointment with Ms. Davidge which was scheduled for that day. Col. Haupt ordered him to attend the appointment. At the appointment, Ms. Davidge noted that Eddie was markedly less agitated and quoted him as saying "I didn't know so many people care about me. I realize the only one I'd hurt would be me and

my daughter and my family. If she wants a divorce, I know I can handle it now."

Based upon that second interview, Ms. Davidge concluded that psychiatric referral was not necessary, but recommended that Eddie continue seeking Dr. Bolinder for counseling. Her notes also indicate that she and Eddie mutually agreed that his mental health appointments with her need not continue. Eddie never saw Dr. Bolinder again, and Ms. Davidge never advised Col. Haupt of the fact that she would no longer be seeing Eddie. On or about January 10, 1992, at Eddie's request, M.Sgt. Yekel returned his personal weapons to him, ostensibly for use in target shooting, but Arlene was not notified.

On January 20, 1992, Eddie picked up his daughter Loretta so she could spend the day with him while Arlene was at work. After work, Arlene picked up some fast food and then drove to the Gutierrez's Rio Rancho home, where all three ate dinner. Sometime during that evening, Eddie shot and killed Arlene and Loretta and then killed himself.

## DISCUSSION

Defendants filed three motions for dismissal and/or summary judgment. A hearing was held on these motions on May 22, 1996. After carefully considering the pleadings, the applicable law and oral argument of counsel, the Court granted Defendants' motions in a Memorandum Opinion and Order issued May 27, 1996. Plaintiff subsequently filed her motions for reconsideration.

A motion for reconsideration is an opportunity for the court to correct manifest errors of law or fact, to review newly discovered evidence or to review a prior decision when there has been a change in the law. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985). Absent

extraordinary circumstances, "revisiting the issues already addressed 'is not the purpose of a motion to reconsider.'" *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Mere disagreement with a court's factual findings is also not a proper basis for a motion to reconsider. *See Bowe v. SMC Electrical Products, Inc.*, 945 F. Supp. 1482, 1483 (D. Colo. 1996) (noting that a motion for reconsideration is proper when the court has made a mistake not of reasoning but of apprehension) (internal quotes and cites omitted). A motion to reconsider advanced for improper purposes "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Administration Committee*, 121 F.R.D. 69, 71 (N.D.Ill.1988).

>In her motions, Plaintiff raises the following points as grounds for reconsideration:
>
>1. The Court failed to address Plaintiff's contention that the discretionary function exception to the Federal Torts Claims Act does not apply to cases of medical malpractice on the part of government physicians.
>
>2. The Court failed to address Plaintiff's contention that the contract between the Air Force and Lovelace Medical Center provided mandatory requirements that the military provide protocols for triage patients and that the failure to do so by the military doctors is not protected because such failure amounted to medical malpractice, and for the further reason that the failure to comply with a mandatory requirement is not protected by § 2860(a).
>
>3. The Court erroneously concluded that military standards of conduct as established by the Military Code of Justice, the Manual For Courts Martial, the Rules for Courts Martial, or military customs and usages do not constitute a policy that establishes standards of conduct which are mandatory for military personnel dealing with situations such as were involved in this case, and that Plaintiff has failed to present "competent evidence" showing these standards were violated.
>
>4. The Court erred in finding as a matter of law that Defendant Lovelace's relationship with Eddie Gutierrez was "voluntary."
>
>5. The Court erred in finding as a matter of law that Defendant Lovelace's owed no duty to warn Plaintiff's decedents because they were cognizant of the violent

propensities and homicidal threats against them.

6. The Court erred in failing to find that the law of New Mexico would extend Defendants' duty of care to Plaintiff's decedents.

Plaintiff correctly notes that the Court did not fully address some of Plaintiff's contentions. In the interests of efficiency, the Court frequently declines to address a particular contention if the Court's ruling on another issue renders that contention moot. The Court determined that Plaintiff could not state a cause of action under New Mexico law for a claim of medical malpractice. Therefore, it was unnecessary for the Court to reach Plaintiff's contention that the discretionary function exception to the Federal Tort Claims Act does not apply to medical malpractice actions against government physicians.

Plaintiff's contention that the Court failed to address her argument that the contract between the Air Force and Lovelace Medical Center provided mandatory requirements that the military provide protocols for triage patients is without merit. The Court's Memorandum Opinion and Order clearly addressed, and rejected, this argument. The Court wrote "Plaintiff apparently misconstrues the 'protocols' required by the Mental Health Partnership Agreement. The Agreement required the development of protocols for three specific areas not relevant to the facts in this case: routine triage assessment; access to the Lovelace emergency room; and routine diagnostic and therapeutic services. Under the Agreement, no mental health services protocol governing the situation at issue was required." Memorandum Opinion and Order Granting Defendants' Motions for Dismissal and Summary Judgment, filed May 27, 1996 [Doc. No. 150], at page 13.

The remainder of the issues raised in Plaintiff's motions are arguments that were fully

briefed and considered by the Court prior to rendering its original decision.  Plaintiff argues, however, that reconsideration is appropriate because the Court reached the wrong legal conclusions on these issues.  After carefully reviewing the pleadings as well as the Memorandum Opinion and Order entered on May 27, 1997, the Court finds that there have been no manifest errors of law or fact.  It is clear that Plaintiff disagrees with the Court's reasoning and not its apprehension.  The appropriate remedy, therefore, is an appeal and not a motion for reconsideration.

In the alternative, Plaintiff requests that the Court certify the issue of duty to the New Mexico Supreme Court.  In issuing its original decision, the Court found that the case law from New Mexico and other jurisdictions was sufficient to permit the Court to rule on the issue of duty under New Mexico law.  None of the arguments in Plaintiff's motion has persuaded the Court that certification of an issue to a state court after a final decision has been made by the federal district court would further the interests of justice when the federal district court found that the existing case law was adequate to guide its ruling on the issue.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider Order Granting Lovelace Defendant's Motion for Summary Judgment or, in the Alternative, to Certify the Question of Duty to the Supreme Court of New Mexico, filed June 20, 1997 **[Doc. No. 157]** and Plaintiff's Motion to Reconsider the Court's Order Dismissing Plaintiff's Claims Against the United States, filed June 20, 1997 **[Doc. No. 155]** are hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection to Allowance of Costs filed February 10, 1998 **[Doc. No. 169]** is hereby **DENIED** as moot.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

**Attorney for Plaintiff:**
Charles G. Berry

**Attorneys for Lovelace Defendants:**
Gary L. Gordon
Robin A. Goble

**Attorney for Defendant United States:**
January Elizabeth Mitchell